Emilio Torres, demandante y apelante, *v.* Celestina Vélez Díaz y Juan, Angélica, Antonia, Lucila, Manuel y Adrián Vélez Ramírez, demandados y apelados.

No. 6890.—*Sometido:* Enero 23, 1936. *Resuelto:* Marzo 27, 1936.

*R. Hernández Matos,* abogado del apelante; *José I. Fernández,* abogado de los apelados.

El Juez Presidente Señor Del Toro, emitió la opinión del tribunal.

Este es un pleito en cobro de dinero iniciado por Emilio

Torres contra siete menores de edad que estuvieron representados por un defensor judicial nombrádoles al efecto por la corte.

Se alega en la demanda que el demandante en distintas partidas y fechas vendió y entregó en su establecimiento mercantil sito en Ponce provisiones y dinero en efectivo, todo ello en cuenta corriente, a Juan Vélez y a su esposa Matilde Ramírez que fallecieron en 1932 y que liquidada la cuenta a junio 30, 1933, arrojó un saldo a favor del demandante de $950; que los únicos herederos de los esposos Vélez-Ramírez son sus hijos los demandados, y que el indicado saldo no ha sido satisfecho en todo ni en parte.

Contestaron los demandados negando todos y cada uno de los hechos de la demanda. Fué el pleito a juicio. En él los demandados admitieron que eran los componentes de la sucesión de Juan Vélez y Matilde Ramírez siendo sus únicos y universales herederos.

Declaró el demandante, refiriéndose a los esposos Vélez-Ramírez:

"Ellos me cogían dinero prestado, y, al mismo tiempo me cogían en la tienda que yo tenía; y en la cuenta de la tienda que llevaban conmigo, a veces me pagaban y a veces no me pagaban, y así fué que la cuenta se fué aumentando hasta un cierto extremo que llegó a una suma de $950. . . . Desde que han faltado ellos no han podido pagar nada. . . . Yo he tratado de cobrarles, y como son menores de edad, me han dicho que no pueden pagarme."

Y a la pregunta del juez: "¿Qué comprobantes tiene usted de eso?", contestó: "Las notas. Y también los mismos testigos que vivían en la casa de los esposos—una señora que se llama Romualda Rodríguez—y los tíos, que constan también."

Monserrate Ramírez, hermano de Matilde Ramírez, defensor judicial de los menores, testificó sobre las relaciones comerciales de su hermana fallecida con el demandante. Ella le cogía dinero prestado para pagar los intereses sobre una hipoteca, las contribuciones y las medicinas. A la siguiente

pregunta del juez: "¿Usted no le dijo al licenciado Sergio León Lugo que le constaba que su cuñado Juan Vélez antes de morir no le debía un solo centavo a Emilio Torres, que su hermana sí le tomaba provisiones, etcétera?" contestó: "Él fué el que me llamó y me dijo que negara yo en la corte que él le debía a Emilio Torres para entonces vender ellos la propiedad y pagarle al doctor Casanovas y entonces darle el restante a él; y yo dije que no, que yo no podía hacer eso porque a mí me constaba que él debía ese dinero y que no quería enemistades con él ni con el doctor ni con nadie, y que si venía a la corte venía a decir la verdad."

Romualda · Rodríguez declaró que estuvo viviendo tres años con los esposos Vélez–Ramírez; que ellos cogían en la tienda del demandante provisiones y dinero constándole que la cuenta llegó a $950, "porque él mismo me presentaba a mí las notas y todo; yo era la que iba con ellas, cuando ella me mandaba a buscar dinero y a comprarle y todo."

Dió por terminada su prueba la parte demandante y manifestó la demandada:

"DEMANDADA: No tenemos prueba. Yo he hablado con el tío de los menores, con el defensor judicial, y he tenido otra entrevista con los menores, excepto uno de ellos que es loco, y todos me han manifestado, me han confesado que realmente deben eso. Pero yo, no obstante eso, contesté negando los hechos de la demanda para oír la prueba que trajera el demandante."

Llamó el juez de nuevo a la testigo Romualda Rodríguez y le hizo algunas preguntas, y ocurrió lo que sigue:

"JUEZ: Si ésa es toda la prueba, la corte va a decir que no es suficiente. Aquí hay un informe del licenciado León Lugo y, además, otro informe del fiscal de que este Monserrate Ramírez se comprometió a asumir la defensa de los menores y a nombrar un abogado y traer una defensa apropiada en este caso, y, sin embargo, aquí viene a decir todo lo contrario de lo que dice el licenciado Sergio León Lugo que le dijo. Se dicen cosas aquí que deben aclararse.— DEMANDANTE: Pues aquí están para aclararse. En cuanto a lo que dijo Monserrate Ramírez, ya él explicó.—JUEZ: La corte se encuentra sin prueba cuando hay datos ante la corte para haberse traído una

defensa de los intereses de estos menores.—DEMANDADA: Yo hice citar a estos menores a mi oficina—la corte los puede oír—y me han dicho que sí, que deben eso. He llamado también al defensor judicial. . . . —JUEZ: No se trae un libro ni una libreta ni comprobantes ni nada. —DEMANDANTE: A nosotros nos parece que habiendo una prueba que en realidad no ha sido atacada ni impugnada, de acuerdo con nuestro Tribunal Supremo, a falta de otra cosa. . . .—JUEZ: Aparte de que a la corte no le merece crédito la prueba.—DEMANDANTE: Si la corte quiere oír más prueba sobre esto. . . . —JUEZ: Sí, a las dos de la tarde, y que se cite al licenciado León Lugo para esta tarde.''

En la sesión de la tarde volvió a declarar el demandante. Reconoció una libreta en la que consta anotada una cuenta de provisiones y efectivo tomados por Matilde Ramírez y abonos hechos con un saldo deudor de $250.86. La libreta quedó admitida en evidencia sin objeción.

Reconoció otra libreta que contiene la cuenta separada de los préstamos en efectivo con expresión del motivo de cada transacción. Contiene al final el siguiente resumen:

''Sumado desde el mes de gastos (*sic*) 1932 al 1933
''La suma de                                    $649. 64
''Cuenta de tienda con cargo a éstas      250. 86
                                                ———
                                                900. 50''.

Quedó admitida en evidencia, sin objeción. Se admitieron después gran número de recibos de contribuciones, intereses de hipoteca, etc., a nombre de Vélez unos y de su viuda Matilde Ramírez otros.

Compareció luego a declarar el abogado Sergio León Lugo. Su testimonio llena veinte y cinco páginas del récord y es difícil de resumir. Fué el abogado de doña Isabel González de Casanova acreedora hipotecaria de los esposos Vélez-Ramírez encargado de ejecutar como ejecutó el crédito a la muerte de dichos esposos. A gestión suya se nombró defensor a los menores. Se comunicó directamente con éstos. ''Me dijeron que el demandante las había demandado. '¿Y qué han hecho ustedes?' 'Nada, absolutamente.' '¿Por qué?' 'Porque el tío de nosotros no quiere entenderse en nuestros asun-

tos.' '¿Pero qué pasa?' Y ellas me trajeron unas libretas y unos cuantos documentos y me hicieron ver que realmente la cuenta no era ésa, y entonces yo tomé al propio defensor judicial, que había sido en el caso anterior, y fuí a mi oficina con él, y allí me explicó que realmente no era nada de eso; que se le debía una cantidad, pero no ésa.''

Se ocupó entonces de defender a los menores y la corte ordenó al fiscal que interviniera y la corte y el fiscal le encomendaron la práctica de una investigación. ''Me trasladé al sitio y examiné documentos que me presentaron las niñas esas—aquella que está allá fué la que me sacó de una cajita que tenía, unos cuantos documentos—me los mostró y me dijo que no era cierta esa deuda; que, de acuerdo con la libreta que me mostró, había una cuenta de ochenta y pico de pesos y había otra de setenta y pico de pesos que estaba saldada, me dijeron, y me explicaron que la madre tenía dinero, que ellas me encomendaban a mí que obtuviera de un compañero otros tantos documentos que le habían dado para cobro de unas cuentas, pagarés que tenían, y dinero en hipoteca. Yo no quise obtenerlos y averigüé con otro tío de ellas, que no recuerdo el nombre de él, y el tío ese me dijo que no era cierto nada de eso, y que al señor éste, como dos o tres meses antes de morir el padre, esta muchacha le había alquilado una casa y mientras el padre vivió el señor éste estuvo pagando, pero después no; y después que murió la madre no les había pagado un centavo más. Si verdaderamente la madre mientras estuvo viviendo le cogió algunas provisiones y eso, éste les debía una cantidad de dinero a ellas, y en la libreta que me mostraron, aparecían algunos alquileres, pero no completos. No recuerdo si eran cinco o seis pesos que devengaba la casa. Aparecían dos pesos, tres pesos. Yo no sé si esa libreta habrá aparecido. Yo tomé nota de ello y por eso decía que yo tenía nota de todo. Como resultado de todo ese examen e investigación que hice, vino este informe, que sometí a la corte, y le pedía que toda vez que yo no tenía autoridad bastante, que el fiscal investigara detenidamente los hechos. A

mi entender estos niños no deben esta cantidad, de acuerdo con lo que ellos me mostraron aquel día. Ha habido aquí algo más que yo ignoro, pero sé que es una pequeña cantidad como de ochenta y pico de pesos la deuda de estos niños con este señor (se refiere al demandante) cuya deuda en parte está compensada por alquileres de una casa que ellos tenían, donde este señor tenía una tienda cuyas existencias no excederían de setenta u ochenta pesos, que tuve oportunidad de hacerlo desalojar de allí y de ver las existencias. Ése es el origen del informe . . .''

Intervino el juez como sigue:

''Juez: ¿En este informe usted dice que el defensor judicial le manifestó. . . .—Las palabras que constan en el informe son las que el defensor me dijo en mi propia oficina.—. . . .Que él le dijo a usted que Juan Vélez no le debía nada a Emilio Torres, sino que fué después de la muerte de él que Matilde Ramírez tomó provisiones a él. Yo le pregunté a él esta mañana cuando él estaba declarando aquí, sobre si le había dicho eso a S. Sa., y contestó que no, que era usted quien quería que él viniera a la corte a decir otra cosa distinta y que él se había negado?—No. En este asunto él fué a mi propia oficina, a requerimiento mío para investigar eso, no voluntariamente —sino a requerimiento, para yo investigar el caso ese de acuerdo con la orden de la corte. Y las palabras que constan en este informe son las palabras exactas dichas por él en mi propia oficina, copiadas por mí en el momento mismo de él decirlas.''

Refiriéndose a las propiedades que quedaron a la muerte de la Sra. Ramírez, contestó:

''El solar pertenece hoy a doña Isabel González de Casanova, junto con dos casas. La otra casa no estaba construída cuando se hizo la hipoteca.''

Dijo que al practicar la investigación no habló con el demandante, ni con las personas que según los menores les debían ciertas sumas, ni tuvo interés en investigar las fuentes de ingreso de doña Matilde. Le dijeron que era curandera y ganaba mucho y que tenía un automóvil que manejaba el marido de la testigo Rodríguez. Las propiedades que eje-

cutó para el cobro de quinientos dólares, intereses y costas, no valían más de trescientos.

Llamado nuevamente el defensor judicial Monserrate Ramírez, contestó al abogado de los menores como sigue:

"Bajo el mismo juramento que usted prestó esta mañana, y en relación con este asunto y la cuenta que se les reclama a estos menores ¿qué me ha dicho usted en mi oficina a mí sobre esa cuenta?— Que es verdad que se le debe al señor Emilio Torres.—¿Le pregunté yo si usted tenía algún detalle, algún documento, algo para traer aquí y contradecir lo que decía Emilio Torres?—. . .—Sí, señor.— ¿Qué usted me contestó?—Que no había para hacer ver a la corte que era verdad que se le debía esa cuenta.—¿Pero yo le pregunté si había algún testigo, algún documento, para yo oponerme a la reclamación de Emilio Torres, si lo había, y usted me contestó qué?— Yo le dije que de acuerdo con los testigos, los que hay son sabedores de que es verdad que había esa deuda; yo no me atrevo decir que yo no se lo dije.—¿Le sugerí yo, entonces, a usted, que usted me llevara los menores a mi oficina?—Sí, señor.—¿Usted me los llevó? —Yo llevé a las que están presentes.—¿Las llevó a la oficina?—Sí.— ¿Y qué dijeron delante de usted?—Que era verdad."

Respondiendo a una pregunta del abogado del demandante terminó diciendo:

"Entonces me llamó Sergio León Lugo y me dijo, 'yo voy a ser defensor de la hipoteca y al mismo tiempo defensor de las muchachas, y para que sobre más, vamos a negar la cuenta de Emilio Torres.'— ¿Quién le dijo eso?—El señor León Lugo.—¿En dónde?—En la oficina de él. Y yo le dije, 'cuando yo ando por las calles de Ponce quiero ir tranquilo, andar derecho, para no tener enemigos;' y él me dijo, 'no se apure, que guapo soy yo en la corte, yo peleo en la corte,' y yo le dije, 'usted pelea en la corte, pero yo no voy a pelear en la calle, que me vayan a matar,' y le dije que no, 'porque este señor es un hombre honrado y yo tengo que pasar por allí por donde él está dos o tres veces todos los días y no suceda que vaya a coger un coraje y me vaya a dar unos golpes.' Yo dije que venía a la corte a decir la verdad.—¿Y en la fiscalía qué usted le dijo delante del compañero León Lugo al fiscal?—Pues le expliqué también lo que él quiso hacer conmigo.—¿Quién?—Sergio León Lugo.—¿Fué verdad que usted le dijo al compañero León Lugo que usted no quería seguir defendiendo a esas muchachas porque no le obedecían?—Yo

le dije que me quería desapartar de esas muchachas porque estaban *enamorás*, y la otra grande no quería parar la pata ni de día ni de noche. Yo lo digo aquí en la corte porque ustedes saben que es verdad, y dije que no quería cargar la responsabilidad de esas muchachas; pero los chiquitos los tengo yo porque si no, quién les va a dar el pan."

Angélica Vélez, una de las demandadas, declaró que llamada por su abogado para preparar su defensa, le informó que la cuenta reclamada era cierta, que se le debía ese dinero a ese señor, refiriéndose al demandante.

El abogado de la parte demandada declaró:

"Me llamo José I. Fernández Segarra, abogado que ejerzo en Ponce, con veintiún años de práctica, desgraciadamente; y cuando me hice cargo de este asunto, que me lo llevó el defensor judicial, lo requerí repetidas veces para que me trajese alguna prueba, algún documento, algún testigo, donde pudiéramos basar nuestra defensa, ya que habíamos preparado una contestación negando los hechos de la demanda. Me dijo que la cuenta era cierta, que debían ese dinero, que no tenían defensa de ninguna clase. Entonces le dije que al día siguiente me trajese a los menores mayores de edad (*sic*) los que tuvieran uso de razón. Al día siguiente me trajo a esta niña que acaba de declarar y otra más pequeña, y les hice la misma pregunta y me dijeron que sí, que debían esa cuenta, que la había originado el padre y después la madre, y después de muerta la madre la habían continuado ellos. Les hice la misma pregunta de si había alguna prueba para traer a la corte para defenderse y me dijeron que no, que al contrario, que deseaba—me dijo ésta—venir aquí hoy y decir que eso era cierto. En esas condiciones yo les dije a mis clientes, y, sobre todo, al que me llevó este asunto, al defensor judicial, que nuestra actitud sería observar la prueba del demandante. Si la corte está satisfecha con mi labor, bien, y si no, yo renuncio y que busque la corte otro abogado que defienda a estos menores mejor que yo."

Compareció por tercera vez el demandante y explicando lo que significaba la prueba de los recibos dijo:

"Hay recibos que, en parte, ellos tenían el completo del dinero y lo ponían; por ejemplo, un recibo de doce pesos, si ellos tenían ocho, me decían, 'quiero cuatro, que yo tengo el resto.' "

Y siguió contestando al juez así:

"JUEZ: Pero usted aparece presentando el recibo como pago por usted. ¿Cuánto le abonaron ellos a usted?—En la misma libretita puede decir.—Yo he tomado el total, lo que aparece al final, que asciende la cuenta a $250.86, la de provisiones. Aquí, en efectivo, hay $649.64, según esto.—Porque yo de lo otro no podía reclamarle más nada.—Y luego, la suma de todos estos recibos da un total de $1,109.40.—Pero es porque, como anteriormente le he dicho, que hay recibos ahí que han puesto el restante de dinero nada más."

Y así terminó la práctica de la evidencia, quedando el caso definitivamente sometido a la corte que lo decidió por sentencia de julio 18, 1934, declarando la demanda sin lugar sin especial condenación de costas.

Para entender la posición asumida por la corte precisa transcribir la relación del caso y opinión que sirvió de base a su sentencia. Dice:

"Se trata de un caso en cobro de dinero, en el que el demandante, Emilio Torres, reclama de los demandados la suma de $950 que el demandante alega haber suministrado en provisiones y dinero a los padres de los demandados, ya fallecidos, y a los propios demandados con posterioridad, y que liquidada dicha cuenta corriente en junio de 1933, dió un saldo a favor del demandante por la suma ya mencionada. Todos los demandados, con excepción de una que no ha comparecido, son menores de edad, y a moción del propio demandante, se les nombró Defensor Judicial a Monserrate Ramírez, quien aceptó el cargo, para que los representase y defendiera en este caso.

"No obstante este nombramiento, de acuerdo con lo que aparece en las minutas de esta Corte del día 9 de marzo de 1934, dos de las demandadas comparecieron en corte abierta ante el Hon. Juez Domingo Sepúlveda e informaron que no estaban debidamente defendidas por su Defensor Judicial y solicitaron que se designara al Lcdo. Sergio León Lugo como *Amicus Curiae* para que las asista en su defensa, a lo que accedió la Corte, concediéndole un término de cinco días para que presentara un informe por escrito en relación con la actitud del Defensor Judicial en este caso. Dicho informe fué radicado con fecha 14 de marzo del corriente año que dió motivo a una vista celebrada el día 16 del mismo mes y año ante el Juez Sepúlveda, con asistencia de las partes y el Fiscal del Distrito, habiendo ordenado la Corte que los autos pasaran al Fiscal para su

investigación è informe escrito, lo que hizo dicho funcionario en el sentido de que el Defensor Judicial continuaría representando a los demandados y asumiría su defensa en este caso procediendo a nombrar un abogado inmediatamente.

"Al efecto, al mes siguiente, compareció el Lcdo. José I. Fernández Segarra en representación del defensor judicial, y después de solicitar insolvencia para sus representadas, que le fué concedida, radicó una contestación negando todos y cada uno de los hechos expuestos en la demanda.

"Señalado el caso para juicio, comparecieron las partes y sus abogados, habiendo practicado el demandante prueba testifical y ninguna los demandados; la Corte, no conforme con la forma en que se producía el Defensor Judicial, a pesar del incidente anteriormente ocurrido, y tratándose de menores de edad, ordenó la comparecencia del Lcdo. Sergio León Lugo como testigo, quien prestó una amplia declaración sobre su intervención en este caso. Asimismo a requerimiento de la Corte, el demandante produjo una serie de libretas y recibos que, según él, justificaban su reclamación de $950.00.

"La Corte, por la apreciación que ha hecho de toda la prueba en este caso, desea hacer constar que no le ha merecido crédito la declaración del demandante y sus testigos; que de acuerdo con las libretas y recibos y comprobantes que presentó, no puede deducirse, a ciencia cierta, qué cantidad es la que los demandados adeudan al demandante, si es que alguna cantidad le adeudan, y que siendo sumamente contradictoria y sospechosa la actitud del Defensor Judicial nombrado, tomando todos estos hechos en consideración, somos de opinión que el demandante no ha probado los hechos alegados en su demanda y que procede declarar como por la presente se declara sin lugar la misma, sin especial condenación en costas."

No conforme el demandante, apeló, señalando como único error el cometido a su juicio por la corte sentenciadora al apreciar la prueba. Termina su alegato así:

"Nosotros no queremos imputarle al Juez de la Corte inferior que haya cometido un atropello en este caso. Dicho Juez de la Corte de Distrito de Ponce es uno de los que más brillo y mérito le dan a la toga, y nosotros reconocemos su extraordinario celo en la administración de la justicia, pero tenemos que decir que honradamente se equivocó, dándole en este caso valor a una evidencia, que no tenía por qué surtir el efecto de impresionarlo."

En el caso de *Blanchero* v. *Sucesión Rosado,* 43 D.P.R. 113, 118, dijo esta Corte:

". . . un juez no está obligado a creer el testimonio de uno o más testigos siempre que las circunstancias concurrentes lo obliguen en conciencia a llegar a esa conclusión. Por supuesto, que no puede actuar caprichosamente. Hemos dicho a conciencia."

Hemos pensado en que quizá deberíamos seguir en éste la línea de conducta que adoptamos en el caso de Blanchero porque estamos convencidos de que el juez de distrito no actuó caprichosamente sino a conciencia. Sin embargo, es tan fuerte el juicio que hemos formado de que el juez, por tratarse sin duda de un asunto de menores, fué más allá de lo que pudo, que nos sentimos obligados a revocar su fallo.

Se advierte que el juez entró a juicio impresionado por lo que había ocurrido anteriormente. Nos referimos a la investigación practicada por el abogado León Lugo. Y se concluye, tras un estudio de la evidencia, que el valor probatorio que dió el juez a dicho informe no está justificado. Según la propia declaración de dicho abogado, sus conclusiones se basaron en manifestaciones del defensor judicial y de alguno o algunos de los demandados, no en una comprobación de sus dichos. Y esas manifestaciones resulta luego que se niegan por las propias personas que se dice que las hicieron, y su negativa se hace en una forma que a nuestro juicio en vez de inspirar sospechas resulta persuasiva. No podemos encontrar nada reprobable en la conducta del defensor. Hizo lo que pudo y la verdad es que la muerte de su hermana la viuda de Vélez le creó una posición difícil y una serie de dificultades que se insinúan en el resumen que dejamos hecho de la evidencia y que surgen con mayor claridad del estudio íntegro y entrelazado de todas las declaraciones tales como constan en la transcripción.

Además, no hay motivo justificado para desechar la evidencia documental explicada por el demandante. El hecho de que sumados los recibos dieran más que lo reclamado, fué aclarado por el demandante. Los recibos no estaban a su

nombre ni fueron pagados por él directamente. Él proporcionaba a los deudores todo o parte del dinero que necesitaban para satisfacer sus deudas. Constituyen evidencia de que no se trataba de algo imaginario, de que eran cosas reales las breves apuntaciones de las libretas explicando el concepto de las pequeñas y repetidas entregas de dinero.

Se trasluce que existían relaciones íntimas entre el demandante y los causantes de los demandados que continuaron hasta la muerte del último de ellos. Y relaciones de negocios también que originaron la deuda. Aunque con muy escasos bienes, los causantes contaban con qué responder. Se explica perfectamente la actitud del demandante dentro de la amistad y del negocio. Y se explica también perfectamente la actitud de la parte demandada. Si estaba convencida de la certeza de la deuda ¿a qué negarla? Al contrario, su deber era reconocerla y pagarla. La evidencia que tiende a levantar la sospecha de que pueda tratarse de algo ficticio—la declaración del abogado León Lugo—carece de base sólida según dejamos indicado, y no es convincente por sí misma. La sola otra acreedora que al parecer existía, la Sra. de Casanova, ejecutó la hipoteca que garantizaba su crédito. ¿A qué, pues, la simulación de la deuda para con el demandante si no había otros acreedores a quienes defraudar eliminando la pequeña casita que quedó al parecer libre por haberse construído después de la constitución de la hipoteca, a no ser que no se consideraran totalmente satisfechos los intereses que el abogado León Lugo representaba, por no haber alcanzado el precio de adjudicación de los inmuebles hipotecados a cubrir la totalidad del crédito garantido, intereses y costas?

*Debe declararse con lugar el recurso y revocarse la sentencia apelada dictándose otra declarando la demanda con lugar sin especial condenación de costas.*

El Juez Asociado Señor Travieso no intervino.